# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| RASPBERRY JUNCTION PROPERTIES, LLC and JULIA TATE PROPERTIES, LLC <br> Plaintiffs, <br><br> v. <br><br> EDWARDS FAMILY PARTNERSHIP, LP and CHARLES C. EDWARDS, M.D. <br> Defendants. | CIVIL ACTION NO. <br>_____ <br><br><br><br><br> JULY 25, 2018 |

## COMPLAINT

### Background Facts and Jurisdictional Allegations

1. Plaintiff, Raspberry Junction Properties, LLC ("Raspberry Junction") is a limited liability company organized and existing under the laws of the State of Connecticut, with a principal place of business in Connecticut.

2. Plaintiff, Julia Tate Properties, LLC ("Julia Tate") is a limited liability company organized and existing under the laws of the State of Connecticut, with a principal place of business in Connecticut.

3. Defendant, Edwards Family Partnership, LP ("EFP") is a limited partnership organized and existing under the laws of the State of Delaware, with a principal place of business in Maryland.

4. Defendant, Charles C. Edwards, M.D. ("Edwards") is an individual domiciled in the State of Maryland. Edwards is both the General Partner of EFP, as well as the individual through whom EFP acted with respect to the matters herein alleged.

5. Because the parties are domiciled in different States there is complete diversity of citizenship and because, as alleged herein, the amount in controversy exceeds $75,000, exclusive of interest, this Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332(a).

6. Without limiting the grounds upon which personal jurisdiction and venue are based, given the acts described and alleged throughout this Complaint, Defendants have transacted business in Connecticut, they have committed a tortious act or acts in Connecticut and Defendants have also committed a tortious act or acts outside Connecticut that has/have caused injury in Connecticut. Indeed, this dispute concerns the purchase and sale of two (2) hotels located in Connecticut under an agreement in which Connecticut law was expressly chosen. Moreover, and as also alleged herein, a substantial portion of the events underlying this dispute occurred in Connecticut and had consequences for and caused harm and injury to two (2) limited liability companies registered and doing business in Connecticut. As such, this Court has personal jurisdiction over EFP and Edwards pursuant to, *inter alia*, Conn. Gen. Stat. § 52-59b(a)(1), (2), and (3) and venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2).

7. Non-party, Raspberry Junction Holding, LLC ("Raspberry Holding") is a limited liability company organized and existing under the laws of the State of Delaware with a principal place of business in Texas. Raspberry Junction is the owner of Raspberry Holding. Raspberry Holding, in turn, owns and operates the Bellissimo Grande Hotel, located on approximately 7.53 acres of real property in North Stonington, Connecticut.

8. Non-party, Julia Tate Holding, LLC ("Julia Tate Holding") is a limited liability company organized and existing under the laws of the State of Delaware with a principal

place of business in Texas. Julia Tate is the owner of Julia Tate Holding. Julia Tate Holding, in turn, owns and operates the Hilton Garden Inn, located on approximately 8 acres of real property in Preston, Connecticut.

9. The Bellissimo Grande Hotel and the Hilton Garden Inn derive a significant portion of their business from individuals seeking temporary accommodations near the casinos and other attractions owned and operated by the Mashantucket (Western) Pequot Tribal Nation and the Mohegan Tribe.

10. From an investment perspective, the value of the Bellissimo Grande Hotel and the Hilton Garden Inn depends, in substantial part, on the market conditions for tribal gaming. Thus, an increasing number of tribal casinos in the region and/or other legal forms of wagering is likely to negatively impact the business of the casinos owned and operated by the Mashantucket (Western) Pequot Tribal Nation and the Mohegan Tribe. Indeed, as the events alleged in this Complaint were unfolding, the MGM Springfield casino in Springfield, Massachusetts was being completed and plans were moving ahead for the construction of the Encore Boston Harbor casino outside of Boston, Massachusetts to be opened in or about June, 2019. In addition, Massachusetts law permits the licensing and construction of a third casino, to be located somewhere in Bristol, Plymouth, Nantucket, Barnstable, or Dukes County, Massachusetts. As such, these circumstances affect the dynamics of the market for the Bellissimo Grande Hotel and the Hilton Garden Inn and that in turn affects the marketability of both hotels.

11. On or about January 24, 2018, EFP entered into a Purchase and Sale Agreement (the "Agreement") under which EFP was to purchase Raspberry Junction's 100% interest in Raspberry Holding and Julia Tate's 100% interest in Julia Tate Holding,

thus giving EFP control and ownership of the Bellissimo Grande Hotel and the Hilton Garden Inn. A true and accurate copy of the Agreement is attached to this Complaint as **Exhibit A**.

12. The purchase price was thirty-five million dollars ($35,000,000) and, pursuant to Section 7.1 of the Agreement, the closing was to occur after the expiration of the Due Diligence Period at the office of EFP's counsel. On or before January 31, 2018, EFP retained Attorney William Rock of the law firm of Shipman & Goodwin LLP ("Shipman") to represent its interests in connection with the transaction contemplated by the Agreement.

13. Shipman is a limited liability partnership organized and existing under the laws of the State of Connecticut with a principal place of business in Hartford, Connecticut. Shipman has offices throughout Connecticut. Attorney Rock is a partner at Shipman, resident in its Hartford office.

14. In connection with the Agreement, on or about January 11, 2018 EFP and Plaintiffs entered into a so-called Finder's Fee Agreement with Frank Nocito, of Westport, Connecticut. Mr. Nocito was to receive a significant finder's fee for his role in finding EFP and referring EFP to Plaintiffs, 50% of which was to be paid by Plaintiffs and 50% of which was to be paid by EFP when and if Raspberry Junction's 100% interest in Raspberry Holding and Julia Tate's 100% interest in Julia Tate Holding were transferred to EFP.

15. As previously alleged, the Agreement contained a choice-of-law clause in favor of Connecticut law. Specifically, Section 15.3 of the Agreement provides "[t]his Agreement shall be governed by the laws of the State of Connecticut, without resort to the choice of law rules thereof."

16. In addition, Section 15.4 of the Agreement provides, *inter alia*, that copies of any notices to be provided by EFP pursuant to the Agreement were to be sent to Plaintiffs' counsel, Attorney Santa Mendoza, an attorney duly licensed to practice in Connecticut with an office in New London, Connecticut. Moreover, during the course of dealings between EFP and Plaintiffs, Edwards, acting on behalf of EFP, exchanged one or more emails with Attorney Mendoza.

### The Required $100,000 Deposit and the Purported Wire Transfer that never occurred

17. Pursuant to Section 2.5 of the Agreement, EFP was to place one hundred thousand dollars ($100,000) in escrow with an escrow agent as 'earnest money' to demonstrate its *bona fides* and its intent to perform the Agreement. Pursuant to the terms of the Agreement, the $100,000 was required to be placed in escrow on or before January 29, 2018. Pursuant to Section 10.1, if EFP wrongfully failed to close the transaction which is the subject of the Agreement, then Plaintiffs were entitled to the payment of those funds as liquidated damages.

18. On or before January 31, 2018 EFP and/or Edwards represented to Plaintiffs that they retained Attorney Rock and/or Shipman to serve as escrow agent.

19. On or about January 31, 2018, Edwards, acting on behalf of EFP, sent Plaintiffs an email representing "[t]he [$100,000] deposit was wired to the [Shipman] real estate trust account from EFP's [Bank of America] account this afternoon." A true and accurate copy of said email is attached to this Complaint as **Exhibit B**.

20. Section 2.5 of the Agreement was a material term of the Agreement without which Plaintiffs would not have consummated the Agreement and would not have continued to communicate with the Defendants concerning the sale of both hotels. Indeed,

in early 2018 there was considerable interest in the Bellissimo Grande Hotel and the Hilton Garden Inn and Plaintiffs received multiple inquiries and multiple offers and interest in the two (2) hotels from other parties. In every case, however, Plaintiffs, through their principal owner Patrick Levantino, materially and detrimentally relied upon EFP's and Edwards' January 31, 2018 representation that the "[t]he [$100,000] deposit was wired to the [Shipman] real estate trust account from EFP's [Bank of America] account this afternoon." Moreover, and also in reliance of the foregoing representation, Plaintiffs gave EFP access to their books, records, and other confidential information regarding the ongoing operations of the hotels and further allowed third-parties to inspect the hotels, none of which they would have allowed absent Defendants' representation that the escrow had been funded.

21. Said wire transfer, however, was never received by Shipman. In fact, on or about June 2, 2018, Attorney Mendoza was informed by Attorney Rock "[a]s indicated, I have never received and do not hold any deposit."

22. Via a June 3, 2018 email Edwards, acting on behalf of EFP, admitted to Plaintiffs, for the very first time, that the wire transfer was never made. Edwards further admitted that, on or about February 7, 2018, he learned that said wire transfer had not been made. A true and accurate copy of said email is attached to this Complaint as **Exhibit C**.

23. Despite the fact that there were many communications between the parties between February 7, 2018 and June 3, 2018, at no time prior to June 3, 2018 did EFP or Edwards inform Plaintiffs that the $100,000 wire transfer had not been made notwithstanding EFP's obligation to place $100,000 in escrow. Indeed, one such communication occurred on or about March 29, 2018 in which Plaintiffs informed EFP via

6

email that they were "ready to refund the escrow if you choose and wish to terminate." EFP and Edwards, however, failed to inform Plaintiffs that the escrow had never been funded.

24. Had Plaintiffs been informed that Edwards' January 31, 2018 representation was false, Plaintiffs would have immediately terminated the Agreement and acted on one or more of the aforesaid other opportunities with which they were presented.

### The Due Diligence Period and Edwards' trip to Connecticut

25. Article 5 of the Agreement contemplated that there would be significant due diligence by EFP after it consummated the Agreement but before it actually purchased Raspberry Junction's 100% interest in Raspberry Holding and Julia Tate's 100% interest in Julia Tate Holding. Among the due diligence provisions of the Agreement was Section 5.3 which afforded EFP one hundred and twenty (120) days starting on January 24, 2018; *i.e.* until May 24, 2018—the so-called Due Diligence Period—in which to make certain agreed-upon inspections of the Bellissimo Grande Hotel and the Hilton Garden Inn and to have access to the books and records of Raspberry Holding and Julia Tate Holding. In fact, during this one hundred and twenty (120) day Due Diligence Period, Defendants availed themselves of the opportunity to inspect in great detail Plaintiffs' books and records, as well as other considerable confidential and proprietary information regarding the operations of the hotels.

26. In addition, pursuant to Section 5.3(c), EFP had the right "for any or no reason....not to proceed with the purchase of [Raspberry Junction's 100% interest in Raspberry Holding and Julia Tate's 100% interest in Julia Tate Holding]" during the one hundred and twenty (120) day Due Diligence Period. If EFP exercised said option then it

was entitled to the return of the deposit required to be paid pursuant to Section 2.5 of the Agreement. EFP, however, never exercised its option to terminate the Agreement and not proceed with its purchase of Plaintiffs' interests in Raspberry Holding and Julia Tate Holding.

27. In accordance with its right under Section 5.3 of the Agreement to inspect the premises of the Bellissimo Grande Hotel and the Hilton Garden Inn the parties began discussing a physical inspection by Edwards as early as January 26, 2018. Ultimately, Edwards and others travelled to Connecticut in April 2018. During that timeframe, Edwards and others met privately with and interviewed the staff of the two (2) hotels, walked the premises, and observed their operations. Edwards and others stayed at the Hilton Garden Inn during their April 2018 stay in Connecticut.

28. At no time during his stay in Connecticut, and despite meeting with Plaintiffs' principal, did Edwards correct his January 31, 2018 misrepresentation that $100,000 had been placed in escrow with Shipman.

### EFP Repudiates the Agreement

29. As noted, EFP failed to exercise its right under Section 5.3(c) of the Agreement to not proceed with the purchase of Plaintiffs' interests in Raspberry Holding and Julia Tate Holding. Nevertheless, on or about May 31, 2018, EFP stated that it would not proceed with the transaction, falsely asserting that it had, in fact, exercised its right not to proceed via correspondence dated February 15, 2018.

### First Count (Breach of Contract against EFP for failure to close)

1-29. Paragraphs 1-29 are hereby incorporated into this First Count, as if fully alleged and set forth herein.

8

30. Plaintiffs have, at all times, fully satisfied their various obligations under the Agreement. Indeed, EFP has never asserted otherwise.

31. EFP's failure and refusal to proceed to close the transaction contemplated by the Agreement in accordance with, *inter alia*, Article 7 of the Agreement was a material breach thereof.

32. Plaintiffs have suffered damages as a result of EFP's material breaches of the Agreement and are entitled to the payment of $100,000 in liquidated damages as set forth in the Agreement.

### Second Count (Breach of Contract against EFP for breach of Section 2.5 of the Agreement)

1-29. Paragraphs 1-29 are hereby incorporated into this Second Count, as if fully alleged and set forth herein.

30. Plaintiffs have, at all times, fully satisfied their various obligations under the Agreement. Indeed, EFP has never asserted otherwise.

31. EFP's failure to place in escrow the $100,000 in earnest money required by Section 2.5 of the Agreement was a material breach thereof.

32. Had Plaintiffs been aware that, contrary to EFP's false representation that it had caused $100,000 to be transferred to Shipman to be held in escrow, no such transfer had occurred, Plaintiffs would never have proceeded with the transaction contemplated by the Agreement. Indeed, they would have declared EFP in default under the Agreement and terminated the Agreement.

33. As a result of Defendants' material breach of Section 2.5, Plaintiffs have suffered damages, to wit: (i) Plaintiffs and their principal wasted time and money meeting EFP's various demands during the Due Diligence Period; (ii) Plaintiffs allowed EFP to

9

review their books and records and get an inside look at their operations, and (iii) Plaintiffs continued to pursue a transaction with a party who was in material breach instead of pursuing one or more of the inquiries and/or offers Plaintiffs received regarding the two (2) hotels. As a result of the foregoing, the Plaintiffs have been damaged in an amount to be proven at trial.

### Third Count (Bad Faith Breach of Contract against EFP)

1-36. Paragraphs 1-29, Paragraphs 30-32 of the First Count and Paragraphs 30-33 of the Second Count are hereby incorporated into this Third Count, as if fully alleged and set forth herein.

37. Plaintiffs have, at all times, fully satisfied their various obligations under the Agreement. Indeed, EFP has never asserted otherwise.

38. As alleged herein, EFP has materially breached the Agreement and it has done so willfully, wantonly, and/or in reckless disregard of Plaintiffs' rights thereunder, thus entitling Plaintiffs to an award of punitive damages, including attorneys' fees as well as other damages in an amount to be proven at trial.

### Fourth Count (Breach of the Implied Covenant of Good Faith and Fair Dealing against EFP)

1-36. Paragraphs 1-29, Paragraphs 30-32 of the First Count, and Paragraphs 30-33 of the Second Count are hereby incorporated into this Fourth Count, as if fully alleged and set forth herein.

37. Plaintiffs have, at all times, fully satisfied their various obligations under the Agreement. Indeed, EFP has never asserted otherwise.

38. Like all contracts, the Agreement contained an implied covenant of good faith and fair dealing, under which the parties were obligated to exercise any discretion they

may have had fairly and in manner that did not frustrate the reasonable *ex ante* expectations of the other parties.

39. As herein alleged, as early as February 7, 2018, EFP was aware that the wire transfer of the $100,000 deposit into Shipman's account had not occurred. Nevertheless, EFP neither caused said transfer to occur, nor did it ever inform Plaintiffs that the transfer had not actually occurred. Instead, EFP kept silent, did not correct its early false statement that the transfer had occurred, and undertook its due diligence even though Section 2.5 was a material term of the Agreement, but ultimately refused to close the transaction contemplated by the Agreement.

40. EFP's conduct unfairly and unreasonably frustrated Plaintiffs' reasonable, *ex ante*, expectation that they were dealing with a buyer who was serious and forthright and who was willing to put up $100,000 in 'earnest money' as an indication that it intended to close the transaction contemplated by the Agreement.

41. As such, EFP's conduct breached the implied covenant of good faith and fair dealing and caused Plaintiffs damages in an amount to be proven at trial.

### Fifth Count (Promissory Estoppel against EFP and Edwards)

1-24. Paragraphs 1-24 are hereby incorporated into this Fifth Count, as if fully alleged and set forth herein.

25. On dates prior to January 31, 2018, Edwards, acting on behalf of EFP represented to Plaintiffs that EFP would deposit $100,000 in escrow, as required by Section 2.5 of the Agreement. That representation, along with EFP and Edward's January 31, 2018 representation that $100,000 had, in fact, been wired from Bank of America to Shipman in accordance with Section 2.5 of the Agreement, were clear and definite and were

11

intended to allay Plaintiffs' concerns as to whether EFP would deposit and had, in fact, deposited the $100,000 in escrow and to induce Plaintiffs to proceed with the transaction contemplated by the Agreement. Said representation also induced Plaintiffs to not act on other offers and letters of intent provided for the two (2) hotels during the period which Plaintiffs believed the Agreement was in effect and the escrow deposit had in fact been made.

26. As herein alleged, Plaintiffs did, in fact, reasonably and detrimentally rely upon Defendants representations concerning and relating to the escrow deposits to their detriment. As herein alleged, Plaintiffs proceeded with the transaction contemplated by the Agreement believing, based on the clear and definite promises and representation of Defendants, that the escrow amount had been paid and as a result the Plaintiffs did not act on or pursue any other offers or letters of intent provided for the two (2) hotels. Moreover, and as alleged, Plaintiffs gave Defendants access to Plaintiffs' books and records and other confidential information relating to the operations of the two (2) hotels, Plaintiffs allowed Defendants to meet privately with and interview employees of the two (2) hotels, and Plaintiffs also permitted third-party inspections of the two (2) hotels. Finally, Plaintiffs, together with their owner and employees, devoted significant time and resources in assembling and providing said information to EFP and in undertaking other acts that were needed to close the transaction which is the subject of the Agreement.

27. As alleged herein, however, the $100,000 was never deposited in escrow with Shipman and Plaintiffs were deprived of the benefit of the $100,000 in liquidated damages when EFP wrongfully terminated the Agreement. In addition, Plaintiffs' reasonable reliance on Defendants' promises and representations caused Plaintiffs

damages in an amount to be proven at trial which amount will include the $100,000 that was required to be funded as well as the lost opportunities while Plaintiffs believed that the escrow was funded. Absent a judgment enforcing Defendants' promise to fund the $100,000 escrow, and other relief warranted by this count, Plaintiffs will suffer injustice.

### Sixth Count (Fraudulent Misrepresentation against EFP and Edwards)

1-39. Paragraphs 1-29, Paragraphs 30-32 of the First Count, 30-33 of the Second Count, and Paragraphs 25-27 of the Fifth Count are hereby incorporated into this Sixth Count, as if fully alleged and set forth herein.

40. As herein alleged, on or about January 31, 2018, Edwards represented to Plaintiffs that the $100,000 deposit required by Section 2.5 of the Agreement had been transferred to Shipman and placed in escrow. As Edwards later conceded, however, that statement was false.

41. As Edwards also later conceded, he knew the wire transfer had not gone through no later than February 7, 2018, but did not correct his January 31, 2018 misrepresentation until June 3, 2018, despite many prior communications between the parties and despite that Edwards spent April 26-28 in Connecticut, visiting the Bellissimo Grande Hotel and the Hilton Garden Inn and meeting with Plaintiffs' principal and others. Under the circumstances, however, Defendants had an affirmative obligation to correct their earlier misrepresentation and their failure to do so and their decision to let that misrepresentation stand until June 3, 2018 constitutes a fraud by omission as well as an affirmative misrepresentation when made.

42. As herein alleged, Plaintiffs reasonably relied upon Defendants' misrepresentation to their great loss and detriment in continuing to pursue a transaction in

which their counterparty was actually in material breach and, believing that the escrow was funded, did not act on or pursue any other offer or letter of intent for the two (2) hotels. Moreover, and as alleged, Plaintiffs gave Defendants access to Plaintiffs' books and records and other confidential information relating to the operations of the two (2) hotels. Plaintiffs allowed Defendants to meet privately with and interview employees of the two (2) hotels, and Plaintiffs also permitted third-party inspections of the two (2) hotels. Finally, Plaintiffs, together with their owners and employees, devoted significant time and resources in assembling and providing said information to EFP and in undertaking other acts that were needed to close the transaction which is the subject of the Agreement.

43. As alleged herein, the conduct of Defendants was willful, wanton, and malicious and Plaintiffs are entitled to an award of common law punitive damages, attorneys' fees in addition to compensatory damages in an amount to be proven at trial.

### Seventh Count (Negligent Misrepresentation against EFP and Edwards)

1-39. Paragraphs 1-29, Paragraphs 30-32 of the First Count, 30-33 of the Second Count, and Paragraphs 25-27 of the Fifth Count are hereby incorporated into this Seventh Count, as if fully alleged and set forth herein.

40. As herein alleged, on or about January 31, 2018, Edwards represented to Plaintiffs that the $100,000 deposit required by Section 2.5 of the Agreement had been transferred to Shipman and placed in escrow. As Edwards later conceded, however, that statement was false.

41. As Edwards also later conceded, he knew the wire transfer had not gone through no later than February 7, 2018, but did not correct his January 31, 2018 misrepresentation until June 3, 2018, despite many communications between the parties

14

and despite that Edwards spent April 26-28 in Connecticut, visiting the Bellissimo Grande Hotel and the Hilton Garden Inn and meeting with Plaintiffs' principal. Under the circumstances, however, Defendants had an affirmative obligation to correct their earlier misrepresentation. At the very least, their failure to do so prior to June 3, 2018 constituted a negligent misrepresentation by omission because they failed to use due care to correct a prior misrepresentation.

42. As herein alleged, Plaintiffs reasonably relied upon Defendants' misrepresentation to their great loss and detriment in continuing to pursue a transaction in which their counterparty was in material breach and believing that the escrow amount was funded, Plaintiffs did not act on or pursue any other offer or letter of intent provided for the two (2) hotels. Moreover, and as alleged, Plaintiffs gave Defendants access to Plaintiffs' books and records and other confidential information relating to the operations of the two (2) hotels, Plaintiffs allowed Defendants to meet privately with and interview employees of the two (2) hotels, and Plaintiffs also permitted third-party inspections of the two (2) hotels. Finally, Plaintiffs, together with their owners and employees, devoted significant time and resources in assembling and providing said information to EFP and in undertaking other acts that were needed to close the transaction which is the subject of the Agreement.

43. As a result of the foregoing, Plaintiffs have been damaged in an amount to be proven at trial.

**Eighth Count (Negligent Misrepresentation against EFP and Edwards)**

1-39. Paragraphs 1-29, Paragraphs 30-32 of the First Count, 30-33 of the Second Count, and Paragraphs 25-27 of the Fifth Count are hereby incorporated into this Eighth Count, as if fully alleged and set forth herein.

40. As herein alleged, on or about January 31, 2018, Edwards represented to Plaintiffs that the $100,000 deposit required by Section 2.5 of the Agreement had been transferred to Shipman and placed in escrow. As Edwards and EFP later conceded, however, that statement was false.

41. Upon information and belief, Edwards undertook no due diligence to ensure the wire transfer had actually occurred before he made the aforedescribed misrepresentation. Under the circumstances and given the relationship between the parties, however, he had an affirmative duty to use due care before making a material representation to Plaintiffs. Edwards' and EFP's failure to use due diligence to actually ascertain whether the wire transfer had occurred constituted a negligent misrepresentation by omission.

42. As herein alleged, Plaintiffs reasonably relied upon Defendants' misrepresentation to their great loss and detriment in continuing to pursue a transaction in which their counterparty was actually in material breach and believing that the escrow amount was funded, Plaintiffs did not act on or pursue any other offer or letter of intent provided for the two (2) hotels. Moreover, and as alleged, Plaintiffs gave Defendants access to Plaintiffs' books and records and other confidential information relating to the operations of the two (2) hotels, Plaintiffs allowed Defendants to meet privately with and interview employees of the two (2) hotels, and Plaintiffs also permitted third-party

16

inspections of the two (2) hotels. Finally, Plaintiffs, together with their owners and employees, devoted significant time and resources in assembling and providing said information to EFP and in undertaking other acts that were needed to close the transaction which is the subject of the Agreement.

43. As a result of the foregoing, Plaintiffs have been damaged in an amount to be proven at trial.

### Ninth Count (Violation of the Connecticut Unfair Trade Practices Act against EFP and Edwards)

1-56. Paragraphs 1-29, Paragraphs 30-32 of the First Count, 30-33 of the Second Count, Paragraphs 37-38 of the Third Count, Paragraphs 37-41 of the Fourth Count, Paragraphs 25-27 of the Fifth Count, Paragraphs 40-43 of the Sixth Count, Paragraphs 40-42 of the Seventh Count, and Paragraphs 40-42 of the Eighth Count are hereby incorporated into this Ninth Count, as if fully alleged and set forth herein.

57. At all times relevant hereto, Defendants were engaged in trade or commerce within the State of Connecticut.

58. Defendants' actions, as alleged herein, constitute unfair trade practices in violation of the Connecticut Unfair Trade Practices Act, Connecticut General Statutes § 42-110a *et seq.*, in that Defendants engaged in unfair methods of competition, engaged in deceptive, immoral, unscrupulous and/or unethical conduct.

59. Because of these aforedescribed acts, practices and unfair methods of competition, Plaintiffs have sustained ascertainable loss, and will continue to suffer ascertainable loss, including, but not limited to, monetary damages, loss of profits and lost opportunities to sell the two (2) hotels.

60. Plaintiffs are entitled to actual damages, punitive damages, costs, reasonable attorneys' fees and any such equitable relief as is proper under the Connecticut Unfair Trade Practices Act.

61. A copy of this Complaint has been sent to the Attorney General of the State of Connecticut.

## Prayer for Relief

**WHEREFORE**, Plaintiffs respectfully requests that this Court:

A. Award them money damages, as well as prejudgment interest with respect to amounts due and owing, on the First, Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth and Ninth Counts;

B. Award them common law punitive damages and attorneys' fees on the Third and Sixth Counts;

C. Award them damages for their ascertainable loss, attorneys' fees, and punitive damages under CUTPA on the Ninth Count;

D. Award costs on all Counts; and

E. Grant such other and further relief, at law, in equity, and/or pursuant to statute which this Court deems just and appropriate with respect to all Counts.

**PLAINTIFFS HEREBY DEMAND A JURY.**

PLAINTIFFS
RASPBERRY JUNCTION PROPERTIES, LLC
and JULIA TATE PROPERTIES, LLC

By Their Attorneys,
NATALE & WOLINETZ

By: _____
Anthony J. Natale (ct08451)
Natale & Wolinetz
116 Oak Street
Glastonbury, Connecticut 06033
Tel. No. (860) 430-1802
Fax No. (860) 430-1809
anatale@natalelawfirm.com